UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

In re:                                              Case No.:  6:13-bk-01294-CCJ
                                                    Chapter 7
SAM DAWKINS,

     Debtor.

_____/

DEBORAH RASPA,                                      Adv. Pro No.

     Plaintiff,

v.

SAM DAWKINS.

     Defendant.

_____/

## COMPLAINT

Creditor, DEBORAH RASPA ("Ms. Raspa"), by and through undersigned counsel, sues SAM DAWKINS (the "Debtor"), and for her causes of action state:

### PARTIES, JURISDICTION, VENUE

1.    Ms. Raspa is a creditor of the Debtor by virtue of hundreds of thousands of dollars loaned by Ms. Raspa to the Debtor for the purpose of purportedly investing in real property for profit.

2.    The Debtor represented himself to Ms. Raspa as holding a finance degree utilized by the Debtor to invest profitably in the real estate market.

3.    On or about February 3, 2013, the Debtor filed his voluntary Petition for protection from creditors pursuant to Chapter 7 of the Bankruptcy Code, thereby initiating the liquidation styled In re Sam Dawkins, Case Number 6:13-bk-01294-CCJ (the "Bankruptcy Case").

4.    This Court possesses jurisdiction pursuant to 28 U.S.C. § 157(b)(2)(I) and (J), and Rule 7001(4) and (6) of the Federal Rules of Bankruptcy Procedure, as well as other applicable law, as this is a "core" proceeding.

5.    This adversary proceeding is properly brought before this Court pursuant to 28 U.S.C. § 1409, and other applicable law.

## BACKGROUND ALLEGATIONS
## TO NON-DISCHARGEABILITY COUNTS

6.    In October 2005, Ms. Raspa met the Debtor while she was working as a nurse in a hospital where the Debtor's father was a patient.

7.    During the Debtor's visits with his father, Ms. Raspa and the Debtor conversed.

8.    During the conversations, Ms. Raspa was informed by the Debtor that he previously worked for an investment firm in Orlando, FL and presently operated a successful real estate investment business.

9.    After the Debtor explained his investment process to Ms. Raspa, she decided to invest with him with the belief that she would return a profit.

***A.    5060 Frederick Avenue, West Melbourne, FL***

10.    On January 12, 2006, the Debtor incorporated Leumas Global Property Investments, Inc. ("Leumas").

11.    The Debtor was the sole owner, officer and director of Leumas, and made all decisions on behalf of Leumas.

12.    On or about June 1, 2006, Leumas purchased real property with a street address of 5060 Frederick Avenue, West Melbourne, FL (the "Frederick Property") for $84,000 for the purpose of renovating the property and selling it for a profit.

13.     Leumas obtained a purchase mortgage of $110,000 to purchase the Frederick Property, leaving $25,000 available for the cost of rehabilitation.

14.     On or about October 10, 2006, the Debtor presented Ms. Raspa with an opportunity to invest in the Frederick Property by paying for the rehabilitation costs, which the Debtor agreed to repay with 12% interest upon the sale of the real property.

15.     Ms. Raspa was not aware that the Debtor already obtained $25,000 from the purchase of the home to pay for rehabilitation costs.

16.     Ms. Raspa delivered a check to the Debtor made payable to Lynette Dawkins in the amount of $15,000 for the rehabilitation of the Frederick Property.  A copy of the check is attached hereto as Exhibit "A".

17.     On or about October 27, 2006, Leumas sold the Frederick Property to the Debtor's parents for $140,000.

18.     Although the purchase price should have satisfied the mortgage encumbering the Frederick Property, as well as provided a profit from the sale, the Debtor failed or refused to pay Ms. Raspa on her investment.

19.     Due to the failure or refusal of the Debtor to pay Ms. Raspa on her investment, on or about November 21, 2006, Leumas executed and delivered a Promissory Note in the principal amount of $25,000 (the "Leumas Note") to Ms. Raspa, which represented the promise to repay, in part, the $15,000 investment on the Frederick Property.  A copy of the Promissory Note is attached hereto as Exhibit "B".

**B.      1523 Waco Boulevard, Palm Bay, FL**

20.     On or about September 15, 2006,  Leumas purchased real property with a street address of 1523 Waco Boulevard, Palm Bay, FL (the "Waco Property") for $115,000 for the purpose of renovating the property and selling it for a profit.

21.     Leumas obtained a purchase mortgage of $130,000 to purchase the Waco Property, leaving $15,000 available for the cost of rehabilitation.

22.     On or about November 21, 2006, the Debtor presented Ms. Raspa with an opportunity to invest in the Waco Property by paying for the rehabilitation costs, which the Debtor agreed to repay with 12% interest upon the sale of the real property.

23.     Ms. Raspa was not aware that the Debtor already obtained $15,000 from the purchase of the home to pay for rehabilitation costs.

24.     Ms. Raspa delivered a check to the Debtor in the amount of $8,500 for the rehabilitation of the Waco Property.  A copy of the check is attached hereto as Exhibit "C".

25.     The Leumas Note reflected the promise to repay the additional $8,500 investment in the Waco Property as well.

26.     On or about January 10, 2007, Leumas sold the Waco Property to Evans Vieux ("Vieux") for $180,000.

27.     Although the purchase price should have satisfied the mortgage encumbering the Waco Property, as well as provided a profit from the sale, the Debtor failed or refused to pay Ms. Raspa on her investment.

**C.      2737 Elm Drive, Palm Bay, FL**

28.     The Debtor located real property at 2737 Elm Drive, Palm Bay, FL (the "Elm Property") for investment purposes.

29.    The Debtor presented Ms. Raspa with the opportunity for her to purchase the Elm Property, rehabilitate the property, and sell the property at a profit, with the Debtor and Ms. Raspa to share in the profits equally.

30.    The Debtor informed Ms. Raspa that although her funds were to be used to purchase the Elm Property, he must have some form of ownership interest in the property in order to receive a profit on the investment, and have the authority to pull permits or otherwise control the rehabilitation process.

31.    On January 8, 2007, Ms. Raspa caused the incorporation of Emerald Property Venture, LLC ("EPV") for the purpose of purchasing the Elm Property.

32.    On January 16, 2007, Leumas and  EPV purchased the Elm Property for $55,000.

33.    Ms. Raspa delivered the following amounts to the Debtor for the rehabilitation of Elm:

   a.  $15,000 on January 30, 2007;

   b.  $15,000 on March 6, 2007;

   c.  $22,000 on May 21, 2007;

   d.  $24,500 on June 13, 2007

   e.  $11,263 on July 12, 2007;

   f.  $837 on July 27, 2007;

   g.  $4,752 on July 30, 2007;

   h.  $1,200 on October 22, 2007

A copy of the checks are attached hereto as composite Exhibit "D".

34.    The Debtor's permit for the renovations, which is dated February 27, 2007, values the cost of the project at $18,000.  A copy of the permit is attached hereto as Exhibit "E".

35.    The permit was not submitted until May 14, 2007 after the Debtor already received $52,000 from Ms. Raspa .

36.    The renovations were never completed and the Debtor never sold the Elm Property.

37.    On June 6, 2011, Ms. Raspa required the Debtor to deed the Elm Property to her.

**D.    *1373 Whaling Avenue SE, Palm Bay, FL***

38.    The Debtor located real property at 1373 Whaling Avenue SE, Palm Bay, FL (the "Whaling Property") for investment purposes.

39.    The Debtor presented Ms. Raspa with the opportunity for her to purchase the Whaling Property, rehabilitate the property, and sell the property at a profit, with the Debtor and Ms. Raspa to share in the profits equally.

40.    The Debtor informed Ms. Raspa that although her funds were to be used to purchase the Whaling Property, he must have some form of ownership interest in order to receive profit on the investment, and have the authority to pull permits or otherwise control the rehabilitation process.

41.    On February 8, 2007, Leumas and EPV purchased the Whaling Property for $125,000.

42.    On February 23, 2007 and March 6, 2007, Ms. Raspa invested $15,000 in the Whaling Property for the costs of rehabilitation after being presented with a construction contract by the Debtor.   A copy of the construction contract is attached hereto as Exhibit "F".

43.    On April 13, 2007, the Whaling Property was sold for $180,000.  A copy of the HUD is attached hereto as Exhibit "G".

44.    After paying the costs associated with closing, the sales proceeds totaled $173,622.19.

45.    After being repaid her initial investment of $140,000, Ms. Raspsa should have received $16,811.09 in profits.

46.    Ms. Raspa only received $13,573.59, which is an amount less than the promised fifty percent (50%) split on the profit.

47.    The Debtor received $17,898.60 from the sale, which is more than the promised fifty percent (50%) split on the profit.  A copy of the Net Proceeds Directive is attached hereto as Exhibit "H".

> E.    *571 SW Garbelmann Street, Palm Bay, FL*
> *1110 Tupelo Road SW, Palm Bay, FL*
> *1590 Nebraska Street NE, Palm Bay, FL*

48.    On August 11, 2009, the Debtor caused the incorporation of Cross Pointe Asset Management, Inc. ("Cross Pointe").

49.    The Debtor was the sole owner, officer and director of Crosse Pointe, and made all decisions on behalf of Crosse Pointe.

50.    The Debtor presented Ms. Raspa with an opportunity for her to purchase defaulted mortgage loans, then institute a foreclosure proceeding for the purpose of obtaining a Certificate of Title to the collateral, at which point the collateral would be sold at a profit due to the discount afforded to the purchase of the defaulted loans.

51.    The Debtor presented Ms. Raspa with executive summaries for the purchase of three defaulted mortgages secured by real property located at: (i) 571 SW Garbelmann Street, Palm Bay, FL (the "Garblemann Loan"); (ii) 1110 Tupelo Road SW, Palm Bay, FL (the "Tupelo

Loan"); and (iii) 1590 Nebraska Street NE, Palm Bay, FL (the "Nebraska Loan") . A copy of the Executive Summary is attached hereto as Exhibit "I".

52.　　The Debtor informed Ms. Raspa that, although her funds would be used to purchase the defaulted loans, the selling entity, Kondaur Capital Corporation, refused to sell its loans to a recently established business, and therefore, the Debtor would need to use his purportedly established company, Crosse Pointe, to purchase the loans.

53.　　Although the Executive Summary provided for a purchase price of $125,795 for the Garbelmann and Tupelo Loans, the Debtor informed Ms. Raspa that she must pay $133,000 for the purchase of the Garbelmann Loan and the Tupelo Loan because the notes were sold at an auction resulting in a higher price.

54.　　On September 21, 2009, Crosse Pointe executed and delivered to Ms. Raspa a Promissory Note in the principal amount of $133,000 for the purchase of the Garbelmann Loan and Tupelo Loan. A copy of the Promissory Note is attached hereto as Exhibit "J".

55.　　The Debtor informed Ms. Raspa that the purchase price for the Nebraska Loan was $75,000. A copy of the wire transmission is attached hereto as Exhibit "K".

56.　　On November 5, 2009, Crosse Pointe executed and delivered to Ms. Raspa a secured Promissory Note in the principal amount of $72,000 for the purchase of the Nebraska Loan. A copy of the Promissory Note is attached hereto as Exhibit "L".

57.　　On April 12, 2010, a Certificate of Title was issued for the Tupelo property.

58.　　On April 29, 2010, a Certificate of Title was issued for the Garbelmann property.

59.　　On April 30, 2010, the Garbelmann property was sold for $93,500.

60.    On May 30, 2010, a check in the amount of $83,649.63 was forwarded to Crosse Pointe for the sale of the Garbelmann property. A copy of the deposit is attached hereto as Exhibit "M".

61.    Ms. Raspa did not receive any payment at the time of the sale of the Garblemann property.

62.    On June 2, 2010, a Certificate of Title was issued for the Nebraska property.

63.    On August 27, 2010, the Tupelo property was sold for $104,000.

64.    On August 30, 2010, a check in the amount of $90,752.16 was forwarded to Crosse Pointe for the sale of the Tupelo title.

65.    On August 30, 2010, Ms. Raspa received a total of $70,050 for both the sale of the Tupelo property and the Garbelmann property.

66.    On September 2, 2010, the Nebraska property was sold for $113,800.

67.    On September 2, 2010, a wire in the amount of $100,000 was sent to Crosse Point.

68.    Ms. Raspa did not receive any payment at the time of the sale of the Nebraska property.

69.    On November 2, 2010, Ms. Raspa received $30,000 from the sale of the Nebraska property.   A copy of the withdrawal is attached hereto as Exhibit "N".

### F. 1516 SE Wacker Avenue, Palm Bay, FL

70.    On December 8, 2008, the Debtor caused the incorporation of Core Capital Ventures, LLC ("Core Capital").

71.    The Debtor was the sole owner, officer and director of Core Capital, and made all decisions on behalf of Core Capital.

72.     The Debtor incorporated Core Capital for the purpose of investing in real estate.

73.     On November 9, 2009, the Debtor presented Ms. Raspa with an opportunity to invest $53,900 in a short sale of real property located at 1516 SE Wacker Avenue, Palm Bay, FL (the "Wacker Property").

74.     The short sale was approved already by the lender, and the Debtor already located a buyer to purchase the Wacker Property and presented Ms. Raspa with a copy of the sale contract. A copy of the short sale approval and sales contract are attached hereto as Exhibits "O" and "P".

75.     On November 5, 2009, Ms. Raspa agreed to invest, and provided a cashier's check in the amount of $53,900 to Core Capital for the purchase of the Wacker Property. A copy of the cashier's check is attached hereto as Exhibit "Q".

76.     The cashier's check was deposited by the title company retained to conduct the short sale.

77.     The short sale was to close on or before November 26, 2009.

78.     On November 15, 2009, the Debtor instructed the title company to hold off on sending the $53,9000 wire for the purchase of the Wacker Property. A copy of the email is attached hereto as Exhibit "R".

79.     On November 16, 2009, the Debtor instructed the title company to divert the $53,900 for the purchase of the Nebraska Loan even though Ms. Raspa had already provided the Debtor with the funds to purchase the Nebraska Loan. A copy of the email and authorization form are attached hereto as Exhibits "S" and "T".

## BACKGROUND ALLEGATIONS
## TO DENIAL OF THE DISCHARGE COUNT

80.    At question 18 in the Statement of Financial Affairs, the Debtor identified having held an ownership interest in The United Short Sale Group ("USSG") as well as Templar Holding Group, Inc. ("Templar").

81.    The Debtor testified at the 341 meeting of creditors that Templar was the 100% owner of USSG.

82.    The Debtor further testified that he sold his interest in Templar to an individual, Ramdyall Benimadhu ("Benimadhu"), in January, 2011 in exchange for a release of a $22,000 debt owed by the Debtor to Benimadhu.

83.    Benimadhu was convicted of innkeeper fraud with the Debtor in 2001.

84.    Benimadhu is not listed as a creditor on the Debtor's schedules.

85.    In a July, 2012 deposition of the Debtor, taken in an unrelated proceeding, the Debtor testified under oath that, as of July, 2012, he owned USSG.  The relevant portions of the July, 2012 deposition transcript are attached as Exhibit "U".

86.    The Debtor testified further that, currently, he works for Benimadhu at USSG.

87.    The Debtor has the very same position that he had when he previously owned USSG.

88.    The Debtor testified further at the 341 meeting that his new employment with USSG was at a reduced compensate rate, which was a condition of the sale of USSG to Benimadhu in case the homes listed by USSG did not sell.

89.    No such requirement exists in the "Agreement for Transfer of Membership Units" or in the "Employment Agreement for Management."

90.     USSG has sold homes since the purported January, 2011 sale of the Debtor's ownership interests in USSG.

91.     As the homes were sold and his wages were withheld, Benimadhu has received payment twice on account of the debt.

## COUNT I
### Non-Dischargeability of Debt Pursuant to 11 U.S.C. 523(a)(2)(A)
#### *5060 Frederick Avenue, West Melbourne, FL*

92.     Ms. Raspa realleges and incorporates by reference the allegations in paragraphs 1 through 19 as if fully set forth herein.

93.     This is an action to determine the dischargeability of the debt based upon the Debtor's oral misrepresentations to Ms. Raspa pursuant to 11 U.S.C. Section 523 (A)(2)(A) for the lost investment in the Frederick Property.

94.     At all relevant times, the Debtor held himself out to Ms. Raspa as an expert in the real estate market and in investing.

95.     At the time the Debtor presented Ms. Raspa with the opportunity to invest in the Frederick Property, the Debtor knew he never intended on repaying Ms. Raspa.

96.     The Debtor already had sufficient funds to complete the rehabilitation.

97.     He intended Ms. Raspa to rely on his expertise and promise to repay.

98.     Ms. Raspa relied on his expertise and promise when delivering the $15,000 to the Debtor.

99.     The Debtor continued to conceal his fraudulent intent by refusing to informed Ms. Raspa that a sale occurred in which he personally received a $29,000 profit whenever she asked about the status of the Frederick Property.

100.    Pursuant to Bankruptcy Code § 523(a)(2)(A), the foregoing indicates that the Debtor should be non-dischargeable based upon the fact that it has arisen as a result of the Debtor's actions taken in a manner that is violative of Bankruptcy law, as referenced above.

WHEREFORE, Ms. Raspa requests that this Court determine that the $15,000 plus interest is non-dischargeable; enter a judgment in favor of Ms. Raspa and against the Debtor for the debt, including attorneys' fees and costs, plus any other damages incurred subsequent to the rendition of the judgment that relates to the claim of Ms. Raspa; and grant to Ms. Raspa any other relief permitted pursuant to applicable bankruptcy or non-bankruptcy law.

## COUNT II
### Non-Dischargeability of Debt Pursuant to 11 U.S.C. 523(a)(2)(A)
*1523 Waco Boulevard, Palm Bay, FL*

101.    Ms. Raspa realleges and incorporates by reference the allegations in paragraphs 1 through 9 and 20 through 27 as if fully set forth herein.

102.    This is an action to determine the dischargeability of the debt based upon the Debtor's oral misrepresentations to Ms. Raspa pursuant to 11 U.S.C. Section 523 (A)(2)(A) for the lost investment in the Waco Property.

103.    At all relevant times, the Debtor held himself out to Ms. Raspa as an expert in the real estate market and in investing.

104.    At the time the Debtor presented Ms. Raspa with the opportunity to invest in the Waco Property, the Debtor knew he never intended on repaying Ms. Raspa.

105.    The Debtor already had sufficient funds to complete the rehabilitation.

106.    He intended Ms. Raspa to rely on his expertise and promise to repay.

107.    Ms. Raspa relied on his expertise and promise when delivering the $8,500 to the Debtor.

108.    The Debtor continued to conceal his fraudulent intent by informing Ms. Raspa when she inquired about the status of the Waco Property, that the sale of the Waco Property did not generate a profit when, in actuality, the sale netted a $50,000 profit to the Debtor.

109.    Pursuant to Bankruptcy Code § 523(a)(2)(A), the foregoing indicates that the Debtor should be non-dischargeable based upon the fact that it has arisen as a result of the Debtor's actions taken in a manner that is violative of Bankruptcy law, as referenced above

WHEREFORE, Ms. Raspa requests that this Court determine that the $8,500 plus interest is non-dischargeable; enter a judgment in favor of Ms. Raspa and against the Debtor for the debt, including attorneys' fees and costs, plus any other damages incurred subsequent to the rendition of the judgment that relates to the claim of Ms. Raspa; and grant to Ms. Raspa any other relief permitted pursuant to applicable bankruptcy or non-bankruptcy law.

### COUNT III
**Non-Dischargeability of Debt Pursuant to 11 U.S.C. 523(a)(2)(A)**
*2727 Elm Drive, Palm Bay, FL*

110.    Ms. Raspa realleges and incorporates by reference the allegations in paragraphs 1 through 9 and 28 through 37 as if fully set forth herein.

111.    This is an action to determine the dischargeability of the debt based upon the Debtor's oral misrepresentations to Ms. Raspa pursuant to 11 U.S.C. Section 523 (A)(2)(A) for the lost investment in the Elm Property.

112.    At all relevant times, the Debtor held himself out to Ms. Raspa as an expert in the real estate market and in investing.

113.    At the time the Debtor presented Ms. Raspa with the opportunity to invest in the Elm Property, the Debtor had not even pulled a permit and was not able to begin rehabilitation.

114.    At the time he pulled the permit, and already received $52,000 from Ms. Raspa, he knew the cost to rehabilitate the Elm Property was $18,000 as reflected by the permit.

115.    He made numerous oral misrepresentations concerning the status of the rehabilitation and the costs associated with the rehabilitation.

116.    He intended Ms. Raspa to rely on his expertise and promise to repay.

117.    Ms. Raspa relied on his expertise and promise when delivering all payments to the Debtor.

118.    Pursuant to Bankruptcy Code § 523(a)(2)(A), the foregoing indicates that the Debtor should be non-dischargeable based upon the fact that it has arisen as a result of the Debtor's actions taken in a manner that is violative of Bankruptcy law, as referenced above.

WHEREFORE, Ms. Raspa requests that this Court determine that the $94,552 plus interest is non-dischargeable; enter a judgment in favor of Ms. Raspa and against the Debtor for the debt, including attorneys' fees and costs, plus any other damages incurred subsequent to the rendition of the judgment that relates to the claim of Ms. Raspa; and grant to Ms. Raspa any other relief permitted pursuant to applicable bankruptcy or non-bankruptcy law.

## COUNT IV
### Non-Dischargeability of Debt Pursuant to 11 U.S.C. 523(a)(2)(A)
### *1373 Whaling Avenue, Palm Bay, FL*

119.    Ms. Raspa realleges and incorporates by reference the allegations in paragraphs 1 through 9 and 3 through 4 as if fully set forth herein.

120.    This is an action to determine the dischargeability of the debt based upon the Debtor's oral misrepresentations to Ms. Raspa pursuant to 11 U.S.C. Section 523 (A)(2)(A) for the lost investment in the Whaling Property.

121.    At all relevant times, the Debtor held himself out to Ms. Raspa as an expert in the real estate market and in investing.

122.    He intended Ms. Raspa to rely on his expertise and promise to repay.

123.    Ms. Raspa relied on his expertise and promise when delivering all payments to the Debtor.

124.    The Debtor misrepresented the need to have title to the Whaling Property in his corporate capacity.

125.    At the time the Debtor presented Ms. Raspa with the opportunity to invest in the Whaling Property, the Debtor knew the condition of the property was good, and that the Whaling Property was not vandalized.

126.    Ms. Raspa relied on his oral misrepresentation concerning the condition of the property, and delivered $15,000 to the Debtor to rehabilitate the Whaling Property.

127.    The Debtor knew that he was to share in the profits equally with Ms. Raspa and failed and refused to do so informing Ms. Raspa that her equal share was $13,573.59.

128.    Pursuant to Bankruptcy Code § 523(a)(2)(A), the foregoing indicates that the Debtor should be non-dischargeable based upon the fact that it has arisen as a result of the Debtor's actions taken in a manner that is violative of Bankruptcy law, as referenced above.

WHEREFORE, Ms. Raspa requests that this Court determine that the $3,237.50 plus interest is non-dischargeable; enter a judgment in favor of Ms. Raspa and against the Debtor for the debt, including attorneys' fees and costs, plus any other damages incurred subsequent to the rendition of the judgment that relates to the claim of Ms. Raspa; and grant to Ms. Raspa any other relief permitted pursuant to applicable bankruptcy or non-bankruptcy law.

## COUNT V
### Non-Dischargeability of Debt Pursuant to 11 U.S.C. 523(a)(2)(A)
*571 SW Garbelmann Street, Palm Bay, FL*
*1110 Tupelo Road SW, Palm Bay, FL*
*1590 Nebraska Street NE, Palm Bay, FL*

129.    Ms. Raspa realleges and incorporates by reference the allegations in paragraphs 1 through 9 and 48 through 69 as if fully set forth herein.

130.    This is an action to determine the dischargeability of the debt based upon the Debtor's oral misrepresentations to Ms. Raspa pursuant to 11 U.S.C. Section 523 (A)(2)(A) for the lost investment in the Garbelmann, Tupelo and Nebraska Loans.

131.    At all relevant times, the Debtor held himself out to Ms. Raspa as an expert in the real estate market and in investing.

132.    He intended Ms. Raspa to rely on his expertise and promise to repay.

133.    Ms. Raspa relied on his expertise and promise when delivering all payments to the Debtor.

134.    The Debtor misrepresented the need to have his purported established business purchase the loans with Ms. Raspa's funds.

135.    The Debtor misrepresented the purchase price for the Garblemann and Tupelo Loans.

136.    At the time the Debtor presented Ms. Raspa with the opportunity to invest in the Garbelmann, Tupelo and Nebraska Loans, the Debtor knew he was not intending on repaying Ms. Raspa.

137.    The Debtor concealed his motive by not informing Ms. Raspa of the sale of the properties.

138.    Pursuant to Bankruptcy Code § 523(a)(2)(A), the foregoing indicates that the Debtor should be non-dischargeable based upon the fact that it has arisen as a result of the Debtor's actions taken in a manner that is violative of Bankruptcy law, as referenced above.

WHEREFORE, Ms. Raspa requests that this Court determine that the $104,950 plus interest is non-dischargeable; enter a judgment in favor of Ms. Raspa and against the Debtor for the debt, including attorneys' fees and costs, plus any other damages incurred subsequent to the rendition of the judgment that relates to the claim of Ms. Raspa; and grant to Ms. Raspa any other relief permitted pursuant to applicable bankruptcy or non-bankruptcy law.

<u>**COUNT VI**</u>
**Non-Dischargeability of Debt Pursuant to 11 U.S.C. 523(a)(2)(A)**
*1516 Wacker Avenue, Palm Bay, FL*

139.    Ms. Raspa realleges and incorporates by reference the allegations in paragraphs 1 through 9 and 70 through 79 as if fully set forth herein.

140.    This is an action to determine the dischargeability of the debt based upon the Debtor's oral misrepresentations to Ms. Raspa pursuant to 11 U.S.C. Section 523 (A)(2)(A) for the lost investment in the Wacker Property.

141.    At all relevant times, the Debtor held himself out to Ms. Raspa as an expert in the real estate market and in investing.

142.    He intended Ms. Raspa to rely on his expertise and promise to repay.

143.    Ms. Raspa relied on his expertise and promise when delivering all payments to the Debtor.

144.    The Debtor misrepresented the entire investment to Ms. Raspa to induce her to invest.

145.    The Debtor lied about there being an approved short sale for the real property.

146.    At the time the Debtor presented Ms. Raspa with the opportunity to invest in the Wacker Property, the Debtor knew he was not intending on repaying Ms. Raspa.

147.    The Debtor concealed his motive by not returning the investment to Ms. Raspa when the short sale did not close.

148.    Pursuant to Bankruptcy Code § 523(a)(2)(A), the foregoing indicates that the Debtor should be non-dischargeable based upon the fact that it has arisen as a result of the Debtor's actions taken in a manner that is violative of Bankruptcy law, as referenced above

WHEREFORE, Ms. Raspa requests that this Court determine that the $53,900 plus interest is non-dischargeable; enter a judgment in favor of Ms. Raspa and against the Debtor for the debt, including attorneys' fees and costs, plus any other damages incurred subsequent to the rendition of the judgment that relates to the claim of Ms. Raspa; and grant to Ms. Raspa any other relief permitted pursuant to applicable bankruptcy or non-bankruptcy law.

## COUNT VII
### Non-Dischargeability of Debt Pursuant to 11 U.S.C. 523(a)(6)

149.    This is a cause of action seeking to determine the Debt is be non-dischargeable under applicable law, including Bankruptcy Code § 523(a)(6).

150.    Ms. Raspa realleges and reincorporates by reference paragraphs 1 through 79 as set forth above.

151.    Pursuant to Bankruptcy Code § 523(a)(6), the foregoing indicates that the $280,139.50 (the "Debt") in lost investments with the Debtor is non-dischargeable based upon the fact that the debt arose as a result of the Debtor's willful and malicious injury to Ms. Raspa.

152.    The Debtor's actions were willful and malicious because:

a.    the Debtor knowingly made material oral false misrepresentations to Ms. Raspa about his expertise in investing in the real estate market;

b. the Debtor knowingly made material false misrepresentations to Ms. Raspa concerning the cost of rehabilitation for the Frederick, Waco and Elm Properties;

c. the Debtor knowingly made material false misrepresentations to Ms. Raspa concerning the profits made on the sales of the Frederick, Waco, and Whaling Properties;

d. the Debtor knowingly made material misrepresentations to Ms. Raspa when required to take title to the real properties purchased via investment;

e. the Debtor knowingly make material misrepresentations concerning the conditions under which the Wacker Property would be purchased.

f. Ms. Raspa justifiably relied on the false misrepresentations of the Debtor when making her investments with the Debtor;

g. the Debtor intended on Ms. Raspa justifiably relying on his false misrepresentations;

h. the Debtor never intended to repay Ms. Raspa on her investments;

i. the Debtor always intended to misappropriate Ms. Raspa's funds.

153.    As the Debtor never intended on repaying Ms. Rapsa's investments and always intended on misappropriating Ms. Raspa's funds for his own personal benefit and use, the Debtor willfully and maliciously injured Ms. Rasps because Ms. Raspa is owed the Debt

WHEREFORE, Ms. Raspa seeks judgment in her favor and against the Debtor determining that the Debt is non-dischargeable, the entire amount of the Debt is owed to Ms. Raspa by the Debtor, including attorneys' fees and costs, plus any other damages incurred subsequent to the rendition of the Debt that relates to the claim of Ms. Raspa; and granting Ms. Raspa any other relief permitted pursuant to the Debt and applicable bankruptcy or non-bankruptcy law.

## COUNT VIII
### Denial of Discharge 11 U.S.C. §727(a)

154.    This is a cause of action seeking to deny the Debtor a discharge under applicable law, including Bankruptcy Code § 727(a).

155.    Ms. Raspa realleges and reincorporates by reference paragraphs 1 through 5 and 80 through 91 as set forth above.

156.    The Debtor has misrepresented his ownership interest in USSG on his schedules.

157.    In all, the Debtor's self-serving testimony at the 341 meeting is not credible.

158.    His prior testimony, his relationship with Benimadhu, his current position at USSG, and the inconsistent sale terms lead to a reasonable conclusion that the sale was fabricated and the Debtor continues to enjoy the benefits of his ownership interest in USSG.

159.    USSG is a viable, operating real estate company generating revenues from the short sales of homes.

160.    The Debtor has intentionally concealed his ownership interest in USSG because USSG has an inherent value as an asset, and the Debtor would lose that value in a Chapter 7 liquidation.

161.    The Debtor has prepared fraudulent documentation concerning the purported sale to disguise his true intent and has provided that documentation to the Trustee and to his creditors for them to rely.

162.    Pursuant to Bankruptcy Code § 727(a), the foregoing indicates that the Debtor should be denied a discharge

WHEREFORE, Ms. Raspa seeks judgment in her favor and against the Debtor denying his discharge and granting Ms. Raspa any other relief permitted pursuant to the Debt and applicable bankruptcy or non-bankruptcy law.

/s/ Maureen A. Vitucci
JOHN M. BRENNAN
Florida Bar No. 0297951
MAUREEN A. VITUCCI
Florida Bar No. 0605530
GrayRobinson, P.A.
301 E. Pine Street, Suite 1400
Post Office Box 3068
Orlando, Florida 32802-3068
(407) 843-8880 Telephone
(407) 244-5690 Facsimile
Attorneys for Deborah Raspa

# 964829 v1